Sidney L. Hebert was knocked down by an automobile driven by Christian Meibaum, while he was walking across Freret Street at Napoleon Avenue in the City of New Orleans. Hebert brought this suit against Meibaum and his insurance carrier, the United States Casualty Company, for $28,624.99, as damages for physical injuries, loss of wages and the reimbursement of medical expenses incurred as a result of the accident.
The defendant denied all responsibility for the accident, which he claimed was entirely due to Hebert's negligence, and, in the alternative, pleaded contributory negligence.
There was judgment below in plaintiff's favor in the sum of $7,958.94 against both defendants, in solido, and they have appealed. Plaintiff has answered the appeal asking that the amount awarded below be increased.
It appears from the evidence that at about 1:00 P.M. on August 5, 1940, Hebert, an employee of the H.G. Hill Stores, Inc., who was 54 years of age, was a passenger in an automobile driven by James E. Curren. The automobile was proceeding out Napoleon Avenue in the direction of Lake Pontchartrain, and as Curren turned into Freret Street, which intersects Napoleon Avenue at a right angle, Richard Burch, District Manager of the Hill Stores, was observed driving his car on the opposite side of Freret Street near the intersection. Burch was signalled to stop, which he did. Curren parked his car on the lakeside of Freret Street about twenty-five feet from Napoleon Avenue. The Burch car was stopped and parked parallel to the curb on the opposite or riverside of Freret Street across from the Curren car. Hebert and Curren walked across the street and conversed with Burch and Hebert, with the intention of returning to the Curren car, started back to the lakeside of Freret Street. According to his testimony, he looked to his left and saw the Meibaum car approaching about one hundred feet away, traveling about forty miles per hour. He also looked in the other direction at the traffic light which was turning from green to amber and believing that Meibaum would stop, continued across. He was struck by the left fender of the Meibaum car at about the middle of Freret Street.
Freret Street is a two way thoroughfare with two street car tracks thereon. Meibaum contends that the accident occurred nearer the riverside curb, but the evidence clearly preponderates to the effect that it was in the center of the street.
Meibaum, who resides about four blocks from where the accident happened, testified that he left his home in his Dodge Coupe with the intention of going to the Market Place Branch of the Whitney Bank; that when he passed the intersection of Jena and Freret Streets, one block above Napoleon Avenue, he was driving about fifteen miles per hour and noticed the Burch car on the riverside of Freret Street near Napoleon, and the two men (Curren and Hebert) standing on the street side thereof; that when he reached a point about the middle of the block between Jena and Napoleon Avenue, he saw the traffic light at Napoleon Avenue turn to red and, preparing to stop at the intersection, reduced his speed to about ten miles per hour; that when he was almost even with the rear of the Burch car, Hebert suddenly moved out into the street and that there was nothing he could do but put on his brakes, which he did, without being able to avoid contact with Hebert; that at the time when he first saw Hebert moving towards the other side of Freret Street, he was about six feet away from him. *Page 752 
Meibaum's statement is somewhat discredited by numerous inconsistencies. For example, he testified that he did not knock Hebert down, he fell down and also that he hit him with the right bumper on the leg and "the man just stood up awhile there and then fell over" and also "I do not know if I even touched that man" and again "when I saw him I put on my brakes and the man fell over". At another point in his testimony he admitted that he had stated to the police just after the accident, that he had hit Hebert. He also testified that the accident happened about fifty feet from the pedestrian traffic lane, but later admitted that it was only a few feet, say ten or twelve.
Burch testified that after the accident Meibaum admitted his fault, saying "I did not see the old man (Hebert). I was trying to make the light". Burch also testified that Meibaum said that Hebert had nothing to worry about since he (Meibaum) was covered by insurance.
Police Officer Frank Reno testified that Meibaum had told him that he did not see Hebert until it was too late to stop his automobile.
Both Curren and Burch testified that Meibaum could have avoided the accident by swerving to the right or left as there was no other vehicle approaching and as there was ample room on either side.
The main reliance of plaintiff is upon the doctrine of the last clear chance and since we believe this doctrine to be applicable, we need not discuss the charges and counter charges of negligence raised by the pleadings.
According to Meibaum's testimony he was traveling only fifteen and later ten miles per hour in approaching the intersection of Napoleon Avenue and Freret Street and, if he did not see Hebert attempting to cross the street, as he claims, there was no reason why he could not have seen him had he been looking and, at the slow speed that he says he was traveling, there should have been no difficulty in avoiding the accident. It is true that Hebert says that Meibaum was going much faster than fifteen miles per hour, but be that as it may, Meibaum admits having seen the traffic light change to red when he was one-half block away from the intersection. If this is so, he could have stopped his car and avoided the accident whether his speed was ten miles as he claims or forty as Hebert asserts. If he had been looking ahead of him as he should there was no reason * * * he could not have seen Hebert.
The trial judge accompanied by attorneys and litigants went to the scene of the accident where the Burch and Curren cars, or some other vehicles were placed in the positions occupied by these cars at the time of the accident. The Court was thus enabled to obtain a clearer view of the locality of the accident and its judgment holding the defendant liable was fortified by an unusual understanding of the surrounding circumstances.
Plaintiff's medical expenses, which he places at $1383.94, are not contested. An item of $1575 covering loss of wages should be reduced by the sum of $646.80, which amount was paid him by his employer during his disability.
Plaintiff's injuries, as described by counsel in his brief, are as follows:
"A complete intracapsular fracture of the right femur, contusions and injury to the left knee, swelling and contusions and also brush burns to the left leg and contusions of the left shoulder. Hebert stayed in Hotel Dieu under treatment from August 5, 1940, to October 13, 1940. He then went home and gradually commenced to regain his strength and to learn to walk with a brace on his leg and crutches. He returned to the hospital on December 2, 1940, as of which time his general physician and surgeon, Dr. Martin O. Miller, called in Dr. H. Theodore Simon, an Orthopedic Specialist and Bone Surgeon, who inserted what is known as a Smith-Peterson nail approximately four inches in length into the broken fragments of the bone. * * *. He has a shortness of the left leg not exceeding half an inch and a limitation of flexation of the knee joint."
We believe the amount awarded below, $5,000 for pain and suffering appropriate.
For the reasons assigned the judgment appealed from is amended by reducing the amount awarded plaintiff from $7,958.94 to $7,310.14, and as thus amended it is affirmed.
Amended and affirmed.
McCALEB, J., concurs. *Page 753